THE EVANGEL.

(District Court, D. Washington, N. D. May 26, 1899.)

1. MARITIME LIENS—MONEY SUPPLIED TO VESSEL.
  The maritime law gives a lien for money supplied for the use of a ship and necessary to enable her to proceed on her voyage similar in all its essential features to maritime liens for other kinds of necessary supplies.[1]

2. SAME—EFFECT OF SALE OF VESSEL IN ADMIRALTY.
  All liens upon a vessel, whether impressed by general maritime law or local statutes, or created by bonds or mortgages, are completely and finally extinguished by a sale of the vessel pursuant to an admiralty decree in rem, and no lien for a pre-existing debt can thereafter be created or re-

---

[1] For maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

vived, so as to become enforceable against the fund produced by the sale, to the exclusion of creditors whose liens were fixed before the sale.[2]

3. SAME—SURETY ON RELEASE BOND—SUBROGATION.

The effect of a bond given for the release of a vessel after its seizure by a court of admiralty in a suit in rem is to extinguish the lien of the libelant on the vessel, and a surety on such bond who pays the claim of the libelant after the vessel has been sold in subsequent proceedings to enforce other liens does not by such payment become subrogated to any right in the fund produced by the sale.

In Admiralty.

The steamer Evangel having been sold under a decree in admiralty to satisfy maritime liens, and said liens having been paid from the proceeds of the sale without exhausting the fund, the case came on to be heard upon questions as to the disposition to be made of the surplus and remnants.

Will H. Morris, for intervener United States Fidelity & Guaranty Co.

Morris B. Sachs, for intervener First Nat. Bank of Port Townsend.

A. W. Buddress, for interveners Fowler and Katz.

HANFORD, District Judge. This is a suit in rem, against the steamer Evangel, to enforce a maritime lien for wages. The steamer, having been arrested under a writ of attachment according to the usual course in such cases, was released upon a bond given pursuant to section 941, Rev. St. U. S.; the United States Fidelity & Guaranty Company, one of the above-named interveners, being the sole surety upon said bond. After being so released, she was retaken by the marshal under other writs sued out by intervening libelants claiming to have liens for wages and for supplies and materials furnished, and, after being released in a similar manner the second and third time, and again rearrested under similar process sued out by other intervening libelants, she was, pursuant to a decree of this court, sold to satisfy the demands of the intervening libelants who were adjudged to have valid maritime and statutory liens. The court also rendered a decree against the claimant and said surety company for the amounts adjudged to be due to the original libelant and each of the intervening libelants to whom security was given as above stated. After paying all costs, and the several amounts due to the intervening libelants in whose favor the decree was rendered for sale of the vessel, there remains in the registry of the court a balance of several hundred dollars of the proceeds of the sale to be disbursed. Since the sale of the vessel, the above-named surety company has paid the sums decreed against it in full, aggregating an amount exceeding the balance in the registry, and it is now before the court asking for said balance. The argument made in its behalf is founded upon the theory that, having secured the release of the vessel, and afterwards paying demands which were originally enforceable by process in rem, it is, according to principles of equity, entitled to be subrogated to the rights of the original creditors as lienholders,

2 For extinguishment of lien by judicial sale, see note to The Nebraska, 17 C. C. A. 102.

and to claim the money in the registry in lieu of the liens upon the ship which were displaced by giving the several release bonds above mentioned. Each of the other interveners above named is the owner of a mortgage upon the vessel, given prior to the commencement of this suit, and they claim that the remnant of the fund should be paid to them in satisfaction pro tanto of the debts secured by their mortgages.

Whether or not the equitable doctrine of subrogation has any place in admiralty practice is not a question which must necessarily be decided in this case, because the surety company in whose behalf the doctrine is invoked will not present itself in a more favorable attitude for the purpose of claiming the fund in court, if the doctrine of subrogation shall be applied in this case, than it will otherwise occupy. According to the rule in equity, payment of the debt of another who is primarily liable under force of necessity, or compulsion, is essential to the right of subrogation, and a person, by his own voluntary act in becoming surety for a debtor, does not become subrogated to the rights of the creditor. The only change effected by the giving of the release bonds was to extinguish the creditors' liens upon the ship, and to substitute in place of the ship the personal security of the bonds. Subrogation could only take place when the surety company paid the amounts due to the creditors, and it could only acquire the rights of the creditors existing at the time of the payments; that is, the personal obligation of the signers of the bond.

The maritime law, as understood and administered by the courts in this country, gives a lien for money supplied for the use of a ship and necessary to enable her to proceed upon her voyage. Thomas v. Osborn, 19 How. 22–56; The Grapeshot, 9 Wall. 129–145. The lien for money advanced is similar in all of its essential features to maritime liens for other kinds of necessary supplies. Davis v. Child, Fed. Cas. No. 3,628. However, all liens upon a vessel, of every description, whether impressed by the general maritime law or local statutes, or created by bonds or mortgages, are completely and finally extinguished by a sale of the vessel pursuant to the decree of a court of admiralty in a suit in rem. In this case the rights of the parties now before the court became definitely fixed by the sale of the vessel. After the sale, no lien for a pre-existing debt could be transferred to the surety company, or revived, or enforced. The case may be summarized thus: The fund in court stands in place of the ship. It is insufficient to pay in full the debts for which liens attached to the ship before the sale. Therefore it all belongs to lien creditors. The liens in favor of those creditors who were paid by the surety company were displaced by the release bonds given for that purpose by the surety company. No lien in favor of the surety company for money advanced to pay lien creditors ever attached to the ship, because the money was not advanced until after the ship was sold. The mortgage liens were existing before and at the time of the sale. Therefore the mortgagees are entitled to the balance in the registry.

I have considered the following cases cited by counsel for the surety company: The Tangier, Fed. Cas. No. 13,744, The J. A. Brown, Fed.

Cas. No. 7,118, and Carroll v. The T. P. Leathers, Fed. Cas. No. 2,455. These decisions favor the application of the equitable doctrine of subrogation in admiralty practice, as do many others, but they do not give any countenance to a claim of the right to be subrogated by one who merely aided the owner of a vessel to extinguish liens by becoming a surety, and who did not pay any debt until after all liens for previously existing debts had been completely destroyed by an admiralty sale. The principle which must govern the decision of this case, and the reasons therefor, are concisely and strongly stated in the opinion by Mr. Justice Bradley in the case of Roberts v. The Huntsville, Fed. Cas. No. 11,904, and the authority of that case is supported by the decision of Judge Dyer in the case of The Robertson, Fed. Cas. No. 11,923, and the decision of Judge Toulmin in The Madgie, 31 Fed. 926.

Ordered that the balance in the registry be paid to the above-named mortgagees.